WILLIAM H. AND J. CHARLENE HUEBL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Huebl v. Commissioner
Docket No. 540-92
United States Tax Court
T.C. Memo 1995-134; 1995 Tax Ct. Memo LEXIS 180; 69 T.C.M. (CCH) 2264; 19 Employee Benefits Cas. (BNA) 1159; March 28, 1995, Filed *180 Decision will be entered for respondent for the reduced deficiency in income tax and for petitioners for the deficiency in excise tax and the additions to tax. For petitioners: William M. Ferris. For respondent: Alan R. Peregoy. ARMEN
ARMEN
MEMORANDUM FINDINGS OF FACT AND OPINION ARMEN, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. [1]
Respondent determined deficiencies in petitioners' Federal income tax and Federal excise tax under section 4973 in the total amount of $ 37,301 for the taxable year 1988. [2] For that same taxable year, respondent also determined an addition to tax under section 6653(a)(1) in the amount of $ 60 and an addition to tax under section 6661(a) in the amount of $ 9,325. Because of concessions by the parties, only *181 a deficiency in income tax in the amount of $ 8,094 remains in dispute. [3] This latter amount includes the 10-percent additional tax imposed under section 72(t) on early distributions from qualified retirement plans. The only issue for decision is whether petitioners' constitutionally guaranteed rights to equal protection *182 and due process were violated when petitioner William H. Huebl was denied the opportunity to participate in a special relief program open only to a specified class of individuals which did not include said petitioner. [4]
FINDINGS OF FACT Some of the facts have been stipulated, and they are so found. Petitioners resided in Annapolis, Maryland, at the time their petition was filed with the Court. During 1988, petitioner William H. Huebl (petitioner) was employed by the State of Maryland as a data coordinator in the former Income Tax Division of the Comptroller's Office. On June 1, 1988, pursuant to his voluntary election, petitioner transferred from the Maryland State Employees' Retirement System (the Retirement System) to the Maryland State Employees' Pension System (the Pension System). [5]
*183 The Retirement System is a qualified defined benefit plan under section 401(a) and requires mandatory nondeductible employee contributions. The Pension System is also a qualified defined benefit plan under section 401(a) but generally does not require mandatory nondeductible employee contributions. The State of Maryland contributes to both the Retirement System and the Pension System on behalf of the members of those systems. The trusts maintained as part of the Retirement System and the Pension System are both exempt from taxation under section 501(a). As a result of his election to transfer from the Retirement System to the Pension System, petitioner received a distribution from the Retirement System on August 8, 1988, in the amount of $ 47,750.46 (the Transfer Refund). The Transfer Refund consisted of $ 23,172.55 in previously-taxed contributions made by petitioner during his employment tenure with the State and $ 24,577.91 of earnings. The earnings constitute the taxable portion of the Transfer Refund. The check that petitioner actually received was for $ 46,132.46; i.e., the gross distribution of $ 47,750.46 less $ 1,618 withheld for Federal income tax. If petitioner *184 had not transferred to the Pension System but rather had remained a member of the Retirement System, he would have been entitled to retire and receive a normal service retirement benefit, including a regular monthly annuity, at age 60. He would not, however, have been entitled to receive the Transfer Refund because the Transfer Refund was payable only upon transferring from the Retirement System to the Pension System. As a result of transferring from the Retirement System to the Pension System, petitioner became, and presently is, a member of the Pension System. As a member of the Pension System, petitioner will receive, upon his retirement, a retirement benefit based on his salary and his creditable years of service, specifically including those years of creditable service recognized under the Retirement System. However, because petitioner received the Transfer Refund, his monthly annuity will be less than the monthly annuity that he would have received if he had not transferred to the Pension System. Petitioner was not age 59 1/2, disabled, retired, or separated from the service of his employer at the time he received the Transfer Refund. One day following his receipt of the *185 Transfer Refund, petitioner deposited $ 25,000 into a Charles Schwab Investment Account (the Schwab account), which he had previously opened. The Schwab account was not an Individual Retirement Account (IRA). The Schwab account was owned jointly by petitioners. In 1988, petitioners realized a capital loss from the Schwab account in the amount of $ 11,491. Prior to April 1989, petitioners received a Form 1099-R, Statement for Recipients of Total Distributions From Retirement Plans (the Form 1099-R), from the Maryland State Retirement Agency (the Retirement Agency). The Form 1099-R indicated that $ 24,577.91 of the Transfer Refund was taxable. Petitioners disclosed the receipt of this amount on line 17a of their 1988 Federal income tax return. However, on line 17b, they reported the taxable amount as zero. Petitioner received an "IMPORTANT ANNOUNCEMENT" (the announcement) dated April 8, 1991, from the Retirement Agency. The announcement related to special arrangements for the Federal tax treatment of certain distributions made by the Retirement System to individuals who had transferred from the Retirement System to the Pension System (the Transfer Refund Relief Program or simply *186 the Program). Included among those who were clearly eligible to participate in the Transfer Refund Relief Program were those who had received distributions in 1988 and had deposited any portion of the taxable amount into an IRA. On April 29, 1991, petitioner replied to the announcement by completing the response form provided by the Retirement Agency. In that response, petitioner indicated an interest in participating in the Transfer Refund Relief Program. The Transfer Refund Relief Program was created in 1991 by agreement between the Internal Revenue Service (IRS) and the Board of Trustees of the Maryland State Retirement and Pension Systems (the Board). The Program was developed to address the problem of double taxation encountered by individuals who had received distributions from the Retirement System and who had mistakenly understood that the distributions would not be subject to taxation in the year received if the taxable portion was rolled over into an IRA. In fact, individuals who did roll over the taxable portion of the distributions were subject to income tax, excise tax, and possibly the 10-percent additional tax under section 72(t) on receipt of the distribution, *187 as well as to income tax on amounts subsequently withdrawn from the IRA. As a result, some individuals may have been obligated to pay total taxes in excess of the amount received in the initial distribution. An action alleging that the Board had given certain taxpayers incorrect tax advice concerning the distributions and the availability of tax-free rollovers was brought in the Circuit Court of Maryland for Baltimore County by some taxpayers who claimed to have received such advice. Individuals who wished to participate in the Transfer Refund Relief Program were obliged to release claims against the State of Maryland relating to erroneous tax advice in connection with distributions from the Retirement System. In order to participate in the optional Transfer Refund Relief Program, prospective participants were also obliged to satisfy two threshold eligibility requirements. The two threshold requirements for participation were: (1) The individual had transferred from the Retirement System to the Pension System during the calendar years 1987, 1988 or 1989; and (2) at least part of the taxable portion of the distribution received in connection with the transfer had been rolled over *188 into an IRA within 60 days of receipt of the distribution, and that all other actions relating to the IRA complied with Federal tax law. Petitioner was unable to participate in the Program because he did not roll over any part of the taxable portion of the Transfer Refund into an IRA. Four options were available to those who met the threshold requirements. A taxpayer choosing Option 1 was obliged to withdraw the amount of the distribution contributed to the IRA as well as the earnings thereon. The taxpayer was taxed in 1991 on that amount. He or she might also be subject to the 10-percent additional tax on an early distribution under section 72(t). However, under Option 1, the distribution could be retained by the taxpayer. A taxpayer who chose Option 2 or Option 3 was required to withdraw the amount of the distribution contributed to the IRA, as well as the earnings thereon, and to return such amount to the Retirement Agency for credit in either a section 401(k) plan or an Annuity Savings Fund. Tax on the distribution was deferred until the amount was distributed upon retirement. Option 4 required the taxpayer to withdraw the amount of the distribution contributed to the *189 IRA, to forfeit the earnings thereon, to return the distribution to the Retirement Agency, and to rejoin the Retirement System permanently. No tax was imposed on the initial distribution under this option. In order to participate in the Transfer Refund Relief Program, taxpayers, other than those selecting Option 4, were obliged to pay an administrative fee of between $ 100 and $ 500. Under the terms of the Transfer Refund Relief Program, because petitioner did not roll over any portion of the Transfer Refund into an IRA, petitioner was not eligible to participate in the Program and therefore was not entitled to choose any of the four options available to eligible participants. Nonetheless, on December 15, 1991, petitioner applied to participate in the Transfer Refund Relief Program by submitting a closing contract to the Agency. Petitioner attempted to select Option 1. The Retirement Agency did not accept petitioner's application because he did not satisfy the eligibility requirements of the Transfer Refund Relief Program. In the notice of deficiency, respondent determined that petitioners were liable for tax on the taxable portion of the Transfer Refund that petitioner received *190 in 1988, as well as for the 10-percent additional tax under section 72(t) on the early distribution from a qualified retirement plan. Petitioners contend that they were denied their constitutionally guaranteed rights of equal protection and due process because petitioner was denied the opportunity to participate in the Transfer Refund Relief Program. OPINION This Court does not take allegations of constitutional violations lightly. We have had occasion to consider taxpayer allegations that the IRS violated due process and equal protection guarantees. See, e.g., , affd. ; ; cf. . Petitioners contend that they were not treated in the same manner as similarly situated taxpayers. This argument is without foundation in either fact or law. The Transfer Refund Relief was designed to address specifically the problem of double taxation encountered when an individual who received *191 a distribution upon transferring from the Retirement System to the Pension System rolled over the taxable portion into an IRA expecting that such amount was eligible for treatment as a tax-free rollover. Accordingly, the IRS and the Board decided to limit eligibility to participate in the Program to those taxpayers who had, presumably inadvertently, subjected themselves to double taxation by rolling over part of their distribution from the Retirement System into an IRA. Petitioner, as he acknowledges, was not in the group of taxpayers who became subject to double taxation because petitioner did not roll over any part of the Transfer Refund into an IRA. [6] *192 Petitioner was therefore not subject to double taxation on the same income. [7] Accordingly, petitioner was not similarly situated to those individuals who were subject to double taxation as a result of having rolled over a part of their distribution from the Retirement System into an IRA. Petitioner was treated in exactly the same manner as other taxpayers who received distributions from the Retirement System upon transferring from the Retirement System to the Pension System and who did not roll over any portion of those distributions into an IRA. In other words, petitioner was subject to taxation only once, during the taxable year 1988, when he received the Transfer Refund. Petitioner has not been, and will not be, subject to double taxation in respect of the Transfer Refund. We hold that petitioners were not denied their constitutionally-guaranteed rights to equal protection and due process when they were precluded from participating in the Transfer Refund Relief Program. Accordingly, we sustain respondent's determination that the Transfer Refund is taxable to petitioners in 1988, the year in which it was received. To reflect the foregoing, as well as concessions by the parties, Decision will be entered for respondent for the reduced *193 deficiency in income tax and for petitioners for the deficiency in excise tax and the additions to tax.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Sec. 4973 imposes a 6-percent excise tax on excess contributions to individual retirement accounts. This tax is included within chapter 43 of the Internal Revenue Code. It is therefore subject to the deficiency procedures set forth in subchapter B of chapter 63 of the Internal Revenue Code. See sec. 6211(a).↩
3. Respondent concedes all but $ 8,094 of the deficiency in income tax. Respondent also concedes that petitioners are not liable for (1) the addition to tax under section 6653(a)(1); (2) the addition to tax under section 6661(a); and (3) the deficiency in excise tax under section 4973. Petitioners concede the partial disallowance of a mortgage interest deduction in the amount of $ 1,600.↩
4. The parties have stipulated that if we find in favor of respondent on this issue, petitioners will be liable for the amount of the deficiency in income tax that remains in dispute.↩
5. For a discussion of the Retirement System and the Pension System, see generally ; see also ; ; ; ; .↩
6. Petitioner testified that he believed that he was rolling over the taxable portion of the Transfer Refund into an IRA and argues that we should take this into account in reaching our decision. The evidence presented on this point was not persuasive. In any event, even if we accept petitioner's testimony, which we emphatically do not, the tax consequences of his actions would not change, see ("a transaction is to be given its tax effect in accord with what actually occurred and not in accord with what might have occurred" (quoting , and thus our decision would in no way be altered.↩
7. Also, as will be recalled, respondent concedes that petitioner is not liable for the sec. 4973 excise tax on excess contributions to an IRA.↩